IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Opelika Division

AMY D. VOGTNER,

    Plaintiff,

v.

CACH, LLC,

COUCH, CONVILLE & BLITT, LLC,

and

PENTAGROUP FINANCIAL, LLC

    Defendants

Civil Action No.

3:12-cv-612-MEF-CSC

JURY TRIAL
DEMANDED

## COMPLAINT

This action arises out of the efforts of the defendants, debt collectors and their law firm, to collect a debt which was claimed to be due from the plaintiff, Amy D. Vogtner, but which she disputed. CACH, LLC, a company which buys and collects delinquent debts, acting through its attorneys, the law firm of Couch, Conville & Blitt, LLC ("CC&B"), filed a lawsuit against Ms. Vogtner in the Lee County (Alabama) Circuit Court seeking to collect this debt. They did this without having evidence to back up their claims and without even having evidence to show that CACH had standing to assert these claims. In addition, this action was taken after Ms. Vogtner had advised CACH, in writing, that this debt was disputed. When it became clear that Ms. Vogtner intended to dispute the claims made in the Lee County lawsuit, the defendants voluntarily dismissed that action rather than produce evidence to support their claims. Then,

after the dismissal of the lawsuit and despite the fact that there was still no evidence to support these claims, defendant Pentagroup Financial, LLC, which is affiliated with CACH, contacted Ms. Vogtner in a further attempt to collect the same debt.

This pattern -- filing suit without evidence to support a claim and with no intention to go to trial -- is common with debt buyers such as CACH. CACH and CC&B filed the lawsuit against Ms. Vogtner knowing that they did not have the evidence to prove their claims in court in the hope that they could use the lawsuit to get money from her without going to trial, either by getting a default judgment or by getting her to agree to make payments. It didn't work in this case only because Ms. Vogtner was represented by counsel and contested their claims.

These actions violated Ms. Vogtner's rights under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq., and in this action she is asserting claims against the defendants under that Act. She also seeks damages for wanton and willful misconduct under Alabama law. She seeks actual, statutory and punitive damages and her costs and attorney's fees in this action.

## Jurisdiction and Venue

1. This Court has jurisdiction to hear the plaintiff's claims under the Fair Debt Collection Practices Act (FDCPA) under 15 U.S.C. §1692k(d) and under 28 U.S.C. §1331.

2. This Court has supplemental jurisdiction to hear the plaintiff's claims for wanton and willful misconduct under 28 U.S.C. §1367(a).

3. Venue is proper in the Middle District of Alabama because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. §1391(b)(2).

## Parties

4. The plaintiff, Amy D. Vogtner, is an adult resident of Opelika, Alabama, which is located in Lee County.

5. Defendant CACH, LLC ("CACH"), is a Colorado limited liability corporation with its principal offices located in Denver. Among other things, CACH is engaged in the business of buying and collecting delinquent debts.

6. Defendant Couch, Conville & Blitt, LLC ("CC&B"), is a Louisiana limited liability corporation with its principal offices located in New Orleans. It also has offices in Birmingham, Alabama. CC&B is a law firm specializing in the collection of unpaid debts.

7. Defendant Pentagroup Financial, LLC, is a limited liability corporation with its headquarters located in Houston, Texas. It is engaged in the business of collecting delinquent debts, among other things. Pentagroup Financial is affiliated with CACH.

## Statement of Facts

8. In early May, 2010, the plaintiff, Amy D. Vogtner, received telephone calls and a letter from the office of Harrison Ross Byck, who stated that he was an attorney admitted to practice in Pennsylvania and New Jersey. Ms. Vogtner was advised that Mr. Byck had been hired by defendant CACH, LLC to collect a debt claimed to have been originally owed to Bank of America, N.A. in the amount of $4,415.48.

9. The letter from Mr. Byck's office, dated May 4, 2010, advised Ms. Vogtner that she could dispute this debt in writing within 30 days and that if she did that Mr. Byck's office would obtain verification of the debt.

10. Ms. Vogtner sent a letter to Mr. Byck's office disputing this debt on May 24, 2010,

within 30 days of the date of his letter. In her letter she asked that Mr. Byck and CACH explain how the amount claimed as due was calculated and the basis for CACH's claim that Ms. Vogtner should pay this debt to CACH.

11. Ms. Vogtner never heard anything further from Mr. Byck's office.

12. Ms. Vogtner never received any verification of the debt from Mr. Byck's office or from CACH.

13. Ms. Vogtner did not receive any explanation of how the amount claimed had been calculated from Mr. Byck's office or from CACH, and she did not receive any information about the basis for CACH's claim that she should pay this debt to CACH.

14. Ms. Vogtner agrees that she once had a BOA credit card, but she does not agree that she owed the sums claimed by CACH and Mr. Byck's office on that account. In fact, before the communications with Mr. Byck's office, Ms. Vogtner had been involved in a long-standing dispute with BOA about what sums she did and did not owe on this account.

15. On or about August 25, 2011, defendant Couch, Conville & Blitt, LLC ("CC&B"), acting as counsel for defendant CACH, LLC, filed a lawsuit in the Lee County, Alabama Circuit Court against Ms. Vogtner (Case No. CV11-361) (referred to hereafter as "the Lee County lawsuit").

16. Prior to filing the Lee County lawsuit, no one from either CACH or CC&B contacted Ms. Vogtner to advise her that they wished her to pay this debt or that a lawsuit was going to be filed.

17. The Lee County lawsuit sought a judgment in favor of CACH and against Ms. Vogtner in the amount of $4,415.48 plus interest and court costs.

18. The interest sought by CACH in its complaint in the Lee County lawsuit was in the

4

amount of $25.30 through June 1, 2011, and then to be calculated at an annual rate of 23.24% for the period following June 1, 2011.

19. In the complaint filed in this action, CACH alleged that it was acting as an assignee and that the original creditor was Bank of America ("BOA"). It stated that it was attempting to collect sums due to BOA on a credit card account.

20. The debt CACH and CC&B were seeking to collect in the Lee County lawsuit was the same debt that Mr. Byck's office had tried to collect from Ms. Vogtner in May, 2010.

21. The complaint and summons in the Lee County lawsuit were served on Ms. Vogtner on October 18, 2011. Ms. Vogtner does not know why service of the complaint and summons on her were delayed.

22. Prior to October 18, 2011, Ms. Vogtner did not know about the Lee County lawsuit.

23. On November 14, 2011, Ms. Vogtner, by counsel, filed a timely answer to the complaint in the Lee County lawsuit denying that she owed the sums claimed by CACH on the BOA credit card account and denying, in addition, that CACH had the legal right to collect any sums that might be due on that account.

24. On November 14, 2011, Ms. Vogtner, by counsel, also filed certain Interrogatories and a Request for the Production of Documents on CC&B, as counsel for CACH. Among other things, Ms. Vogtner sought an itemized statement of the amounts claimed as due, a copy of any document setting out the amount of interest due on the BOA account, and a copy of all documents showing that CACH had the legal right to collect any money due on the BOA account.

25. At the request of one of the attorneys with CC&B, Ms. Vogtner's counsel agreed to an extension of time for CACH to respond to the discovery requests, to January 9, 2012.

26. No responses to Ms. Vogtner's discovery requests were provided by CACH by January 9, 2012.

27. On January 23, 2012, in response to a request from counsel for Ms. Vogtner, CC&B provided 3 documents. CACH did not provide answers to any of the Interrogatories.

28. On January 23, 2012, counsel for Ms. Vogtner sent a letter to CC&B, by e-mail and by regular mail, questioning the adequacy of CACH's discovery responses and advising that a motion to compel might have to be filed.

29. On January 27, 2012, CC&B filed a motion with the Lee County Circuit Court on behalf of CACH asking that the lawsuit against Ms. Vogtner be dismissed.

30. On January 30, 2012, in response to CC&B's motion, the Lee County Circuit Court entered an order dismissing the lawsuit against Ms. Vogtner.

31. One of the documents CACH provided in its discovery response was an affidavit from someone acting on behalf of CACH who stated under oath that Ms. Vogtner did, in fact, owe the money claimed. This affidavit did not refer to any specific documents which explained the basis for the amount claimed, and no such documents were provided.

32. Other than the affidavit described in the preceding paragraph, at no time did CACH or CC&B provide Ms. Vogtner or her counsel any documents or other evidence showing that Ms. Vogtner owed CACH any money for any reason.

33. CACH and CC&B did not at any time have evidence sufficient to establish that Ms. Vogtner owed CACH the amounts it claimed.

34. CACH and CC&B did not have evidence sufficient to establish that CACH was the rightful owner of the BOA credit card account at issue and that it was entitled to collect any sums which might be due under that account.

35. When CACH and CC&B filed the Lee County lawsuit, they had no intention of obtaining the evidence which might be needed to establish CACH's claims in court, and they had no intention of taking that suit to trial and putting on evidence to establish CACH's claims. Instead, their goal was to obtain either a default judgment or an agreement from Ms. Vogtner to pay the sum claimed or some lesser sum. That is why, when they concluded that they were not going to get a default judgment or a voluntary settlement from Ms. Vogtner, CACH and CC&B voluntarily dismissed the lawsuit rather than proceed to trial.

36. The strategy described in Paragraph 25 above is one which is commonly followed by debt buyers and their counsel when they file lawsuits to collect debts without having the evidence to establish their claims.

37. On information and belief, the strategy described in Paragraph 25 above is one which is commonly followed by CACH and by CC&B in the lawsuits they file to collect debts.

38. As a result of CACH having filed the Lee County lawsuit, Ms. Vogtner was forced to spend a great deal of time working on this case to defend her interests.

39. Ms. Vogtner incurred expenses in defending the Lee County lawsuit for attorney's fees in the amount of $750.

40. In March, 2012, agents of defendant Pentagroup Financial, LLC, contacted Ms. Vogtner in an attempt to collect the debt which was the subject of the Lee County lawsuit.

41. On April 12, 2012, an agent of Pentagroup telephoned the undersigned counsel for Ms. Vogtner for the purpose of attempting to collect this debt from Ms. Vogtner.

42. On April 13, 2012, the undersigned counsel sent Pentagroup a letter asking that they produce information showing the basis of the claim against Ms. Vogtner and the basis of the claim that Pentagroup and/or CACH had the right to collect this debt.

7

43. As of the date of the filing of this Complaint, there has been no response to the April 13, 2012 letter.

44. As a result of the actions of CACH and CC&B, as described in this Complaint, Ms. Vogtner suffered the stress of having to defend herself in a lawsuit seeking money she did not owe, and she had to deal with the further stress of having to deal with additional communications to collect this debt even after that lawsuit had been voluntarily dismissed. These actions of the defendants caused Ms. Vogtner emotional distress, anger, shame, frustration, fear and humiliation for a period many months.

45. As a result of the actions of Pentagroup Financial, as described in this Complaint, Ms. Vogtner suffered the stress of having to deal yet again with an agency attempting to collect money which she did not owe, despite the fact that a lawsuit seeking to collect this same debt had just recently been voluntarily dismissed because of the lack of evidence. These actions of Pentagroup Financial caused Ms. Vogtner emotional distress, anger, shame, frustration, fear and humiliation as she sought to deal yet again with demands for the payment of this money.

### First Cause of Action:
### Violations of the FDCPA

All of the allegations of fact set forth above are incorporated into this First Cause of Action as if fully set forth herein.

46. With regard to the collection of the amounts claimed to be owed to CACH and/or Pentagroup Financial by Ms. Vogtner, as described in this Complaint, plaintiff Amy D. Vogtner was a "consumer" within the meaning of the Fair Debt Collection Practices Act (FDCPA). 15 U.S.C. §1692a(3).

47. In its actions to collect this debt from Ms. Vogtner, as described above, defendant

8

CACH, LLC was a "debt collector" within the meaning of the FDCPA. 15 U.S.C. §1692a(6).

48. In its actions to collect this debt from Ms. Vogtner, as described above, defendant Couch, Conville & Blitt, LLC, was a "debt collector" within the meaning of the FDCPA. 15 U.S.C. §1692a(6).

49. In its actions to collect this debt from Ms. Vogtner, as described above, defendant Pentagroup Financial, LLC was a "debt collector" within the meaning of the FDCPA. 15 U.S.C. §1692a(6).

50. In their efforts to collect money claimed to be due from Ms. Vogtner as described in this Complaint, each of the defendants violated the provisions of the Fair Debt Collection Practices Act in numerous ways, including the following:

(a) making false, deceptive or misleading representations in connection with the collection of a debt, in violation of §1692e;

(b) using an unfair or unconscionable means to attempt to collect a debt, in violation of §1692f;

(c) misrepresenting the amount owed, in violation of §§1692e(2)(A), 1692e(10) and 1692f;

(d) misrepresenting the legal status of a debt, including making a claim that more money was owed than was in fact owed, in violation of §1692e(2)(a) and §1692e(10);

(e) threatening to collect and attempting to collect any amount which is not expressly authorized by an agreement creating the debt or permitted by law, in violation of §1692f(1); and

(f) taking action to collect a debt, including filing a lawsuit and communicating with the consumer, without having obtained and provided the consumer with verification of the debt after being advised in writing that the debt was disputed, in violation of §1692g(b).

It is possible that the defendants committed other acts in violation of the FDCPA, and the plaintiff reserves the right to add other violations to this list as additional information becomes available during the course of discovery in this action.

51. The actions of CACH and CC&B, as described in this Complaint, forced Ms. Vogtner to spend time working on and worrying about how to deal with their lawsuit, caused her to incur attorney's fees in the amount of $750, and caused her stress which resulted in emotional distress, anger, shame, frustration, fear and humiliation.

52. The actions of Pentagroup Financial, as described in this Complaint, caused Ms. Vogtner further stress which resulted in emotional distress, anger, shame, frustration, fear and humiliation.

WHEREFORE, the plaintiff, Amy D. Vogtner, by counsel, hereby asks this Court to grant her the following relief under her First Cause of Action:

(a) judgment in favor of Ms. Vogtner and against defendants CACH, LLC and Couch, Conville & Blitt, LLC, and Pentagroup Financial, LLC for her actual damages suffered as a result of the defendants' actions, 15 U.S.C. §1692k(a)(1);

(b) judgment in favor of Ms. Vogtner and against defendant CACH, LLC in the amount of $1,000 in statutory damages, 15 U.S.C. §1692k(a)(2)(A);

(c) judgment in favor of Ms. Vogtner and against defendant Couch, Conville & Blitt, LLC, in the amount of $1,000 in statutory damages, 15 U.S.C. §1692k(a)(2)(A);

(d) judgment in favor of Ms. Vogtner and against defendant Pentagroup Financial, LLC, in the amount of $1,000 in statutory damages, 15 U.S.C. §1692k(a)(2)(A);

(e) an award of her costs and attorney's fees in this action, 15 U.S.C. §1692k(a)(3); and

(f) such other and further relief as to this Court shall seem just and proper.

## Second Cause of Action:
## Wanton and/or Willful Misconduct

All of the allegations of fact set forth above are incorporated into this Second Cause of Action as if fully set forth herein.

53. The actions taken by the defendants in attempting to collect the BOA credit card debt from Ms. Vogtner, as described above, were actions taken in knowing or reckless violation of Ms. Vogtner's legal rights.

54. The actions taken by the defendants, as described above, were actions which they knew or should have known would cause Ms. Vogtner financial loss and other harm.

55. The actions of the defendants, as described above, did in fact cause Ms. Vogtner to suffer financial loss and emotional distress.

WHEREFORE, the premises considered, the plaintiff, Amy D. Vogtner, by counsel, asks this Court for the entry of judgment against defendants CACH, LLC, Couch, Conville & Blitt, LLC, and Pentagroup Financial, LLC, for wanton and/or willful misconduct, in an amount sufficient to compensate her for her damages suffered as a result of their actions. In addition, the plaintiff asks this Court for the entry of a judgment against these defendants for such additional punitive damages as may be determined to be just, proper and appropriate by this Court.

## Jury Trial Demanded

In accordance with Rule 38 of the Federal Rules of Civil Procedure, the plaintiff hereby demands a jury trial of the issues in this action.

11

Respectfully submitted,

AMY D. VOGTNER
Plaintiff
By Counsel

*/s/ Edward M. Wayland*

Edward M. Wayland, Esq.
AOC #WAY004
2800 Zelda Road
Suite 100-5
Montgomery, AL  36106
(334) 409-9688
(334) 460-8670 (fax)
e-mail: edwayland@yahoo.com

Counsel for Plaintiff
Amy D. Vogtner